## BOSTON, CAPE COD & NEW YORK CANAL CO. v. C. W. CHADWICK & CO.

(Circuit Court of Appeals, First Circuit. September 1, 1920.)

No. 1463.

1. **Canals ☞2—Dredged approach held part of canal.**

    The dredged approach to the Cape Cod Canal through the navigable water of Buzzard's Bay, which was necessary to enable vessels to reach the canal, is for some purposes a part of the canal.

2. **Canals ☞29—Pilot of canal company held acting within authority in piloting through dredged approach.**

    A licensed pilot of a canal company, which furnished such pilots to vessels passing through the canal under its charter authority to assist vessels in their approach to and from the canal, is acting within the scope of his employment by the canal company while piloting a vessel through the dredged approach to the canal in Buzzard's Bay, so as to render the canal company liable for his negligence.

3. **Canals ☞29—Pilot's negligence actionable, regardless of vessel's obligation to take canal pilot.**

    Where a canal pilot furnished by the canal company assumed to pilot a vessel through the dredged approach to the canal, the canal company is liable for his negligence, regardless of whether the vessel was required to take the pilot for its passage through such approach.

4. **Canals ☞29—Canal company liable for unlicensed canal pilot's negligence.**

    A canal company, which licensed a pilot to assist vessels through the canal, cannot avoid liability for his negligence while piloting a vessel through the dredged approach to the canal in a navigable bay, on the ground that he had no government license to pilot in such bay, so that his employment by the vessel violated Rev. St. § 4438 (Comp. St. § 8200).

Appeal from the District Court of the United States for the District of Massachusetts; James A. Morton, Judge.

Libel by C. W. Chadwick & Co. against the Boston, Cape Cod & New York Canal Company. Decree for libelant, and respondent appeals. Affirmed.

Samuel H. Pillsbury and Thomas H. Mahony, both of Boston, Mass. (Currier & Young, of Boston, Mass., on the brief), for appellant.

Edward E. Blodgett and Foye M. Murphy, both of Boston, Mass. (Blodgett, Jones, Burnham & Bingham, of Boston, Mass., on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

JOHNSON, Circuit Judge. The appellee was awarded damages in the District Court for the stranding of the steam tug Scranton in the Buzzard's Bay approach to the Cape Cod Canal. The Scranton, having a barge in tow, presented herself for passage at the eastern end of the canal on January 3, 1916. At this time the canal company, in its charge for tolls for passage of the canal, included the services of a canal pilot, furnished by it, and also that of a towboat, if needed, and under the regulations which it had issued no tug was allowed to go through the canal with a tow, unless under the charge of a pilot whose license included navigation of the canal.

Capt. Frank J. McBride, by virtue of a written appointment under date of October 1, 1915, was charged with "the duty of handling the traffic through the canal safely and expeditiously." He had a license as a canal pilot which had been issued to him by the canal company, and, while he did not act regularly as a pilot, he had upon several former occasions piloted vessels through the canal. He boarded the Scranton and told its captain that the regular pilots were all employed, but that he would take her through the canal, and she proceeded with her tow under his command. On the passage through the canal he showed Capt. Brophy of the Scranton his license as a canal pilot.

The Buzzard's Bay, or western, entrance of the canal was reached about dark on January 3d, and as it was snowing she tied up there with her tow for the night. As Capt. McBride was leaving the Scranton that night, he testified that he said to her captain:

"You are all right now; you can start off any time in the morning you are a mind to."

And the captain replied:

"I would like to have somebody go out with me in the morning. I have only been in and out of here a couple of times."

And McBride replied:

"I will come down in the morning, and I will try to have a boat to give you a hand away from the dolphins."

Capt. Brophy of the Scranton testified that Capt. McBride said to him:

"You saw the canal going east, and you can take her out."

And that he said in reply:

"No; I have not seen enough of this place yet to get through without a pilot"

—and that he told him "to come back and finish the job," and Capt. McBride said:

"All right; I will come down in the morning."

Capt. McBride did come down the next morning, and undertook to pilot the Scranton with her tow out through the channel, which had been dredged in Buzzard's Bay and formed the approach to the canal

at that end, and had proceeded about 3 miles through this dredged channel when the accident occurred.

Under the charter which had been issued to the canal company by the commonwealth of Massachusetts the canal company was authorized "to construct a ship canal beginning at some convenient point in Buzzard's Bay and running * * * to some convenient point in Cape Cod or Barnstable Bays." Acts of 1899, c. 448, § 3. Under this authorization it had dredged a channel in Buzzard's Bay to the entrance of the canal, which was shown upon the book of information and regulations issued by the canal company for the use of the public.

The District Judge has found that:

"The canal begins as a dredged channel in Buzzard's Bay near Wing's Neck, some 5 miles from where it first cuts the shore at Buzzard's Bay village. This channel is about 250 feet wide, with sloping sides. It is marked by buoys placed by the United States. Near Wenaumet Point [or "Neck"] the south side of the channel approaches the shore, which in that vicinity is strewn with boulders. That shore and the south bank of the canal adjacent are known to navigators to be dangerous because of these boulders. The other bank of the canal at that place is comparatively free from them and is much the safer one to follow."

He also found that the evidence that Capt. McBride's piloting was faulty is too clear to require discussion, and that the accident occurred solely by reason of his negligence, that the dredged channel was in effect an extension of the canal through the tidal waters of the bay, that McBride was acting as the agent of the canal company within the scope of his employment at the time of the accident, and that it is liable for the damage occasioned by his negligence.

The appellant has assigned these findings as error, and a disposition of them will dispose of all other errors assigned.

[1] We think the District Judge was right in holding that the duty which the canal company had assumed of furnishing a pilot through its canal extended to the approaches to the canal at either end, and that, while the landlocked canal began at the Buzzard's Bay entrance, about three miles from where the accident occurred, the channel which it had dredged as an approach to its westerly end was, for some purposes at any rate, as held by the District Judge, a part of the canal. The waters of Buzzard's Bay were too shoal to allow vessels of the drafts which the canal would accommodate to reach it, and it was necessary to dredge a channel, so that the canal might be reached by them. In the book of information issued by it this dredged channel is clearly shown, and instructions are given in regard to its navigation, as well as that of the landlocked canal. The canal pilots who came aboard vessels at the westerly end of the canal customarily boarded them at Wing's Neck, 5 miles from the westerly end of the canal, and piloted them through this dredged channel, and they customarily left them here after they had piloted them through the canal from the eastward.

[2] By its charter the canal company was authorized to maintain and operate steamers and other vessels—

"or use any other means or methods for assisting vessels in their approach to and passage through and from the canal."

Thus by its charter authority was given to the canal company to assist vessels "in their approach to * * * and from the canal," as well as on their "passage through," and this assistance would include the furnishing of pilots as well as tows.

We are satisfied that it was the duty of one who assumed to act as a pilot of a vessel through the canal to pilot her, not only through that part of it which was landlocked, but also through the dredged channel which constituted the approach to it at either end.

Although there was nothing in the written appointment of McBride in regard to his acting as a pilot for the canal, yet to perform "the duty of handling the traffic through the canal safely and expeditiously," a license as a pilot for the canal had been issued to him by the canal company; and it must have been intended by it that he should act as a pilot, if an occasion arose when it should be necessary for him to do so. It is significant, also, that in the report of the accident made by him to the canal company upon the very day that it occurred, he stated:

"I was piloting the tug Scranton of the D., L. & W. R. R. from Buzzard's Bay with one light Brg. in tow. Left Buzzd. Bay * * * bound for Wing's Neck"

—and that there is nothing in the record to show that the canal company ever repudiated his acting as a pilot for the dredged channel until the trial.

Capt. Robbins, who was in command of one of the towboats chartered by the canal company, testified that Capt. McBride asked him to take him aboard the Scranton and follow the Scranton down to Wing's Neck to take him off, as "he was going to pilot her down."

We are satisfied with the findings of the District Judge that Capt. McBride was acting within the scope of his employment in piloting the Scranton at the time of the accident, that the accident was occasioned by his negligence, that there is nothing in the evidence which would excuse the mistake which he made in laying out the course to be steered by the Scranton at the time of the accident, and that the accident was not occasioned by the Scranton striking against any submerged object which was temporarily within the channel and whose presence was unknown, but by getting out of the channel while under the direct control of Capt. McBride and striking upon a boulder upon or near its bank.

[3] We think it immaterial whether the Scranton was required by the canal company at this time to take a pilot furnished by the canal company or not, as we deem it sufficient for the purposes of this case that Capt. McBride assumed to act as a pilot furnished by the canal company, whose services were paid for in the tolls charged for the passage of the canal, and for his negligence it is clear that the canal company is liable.

[4] It was also contended by the appellant that, as McBride was only licensed as a canal pilot, and had no government license covering the navigable waters of Buzzard's Bay, he was employed by Capt. Brophy in violation of section 4438, Revised Statutes of the United

States (section 8200, Comp. Stat.), which makes it unlawful to employ as a pilot of a steamer of the tonnage of the Scranton one who has not been licensed by the government inspectors, and that such violation was the sole or at least a contributing cause of the accident, which would prevent a recovery by the libelant, although McBride was acting as agent of the canal company and was negligent. While the dredged channel which constituted the approach to the canal proper was in the navigable waters of Buzzard's Bay, it is evident that, at the date of the accident, one who held a pilot's license for those waters would not necessarily have knowledge of the channel which had been dredged by the canal company, for Mate Totman of the Scranton had such a license, but did not have sufficient knowledge of the dredged channel to act as pilot through it, and one who had special knowledge in regard to it was necessary. The canal company, by granting a license to McBride, held him out as one who had such special knowledge, and if it issued him such a license without his having obtained a government license as a pilot for Buzzard's Bay, it cannot take advantage of its wrong by claiming that it should be relieved from the consequence of his negligence because he did not have a government license.

We think that a license to act as a pilot for the canal included, not only that portion of the canal which is landlocked, but also the necessary approaches to it, and that McBride, when he came abroad the tug upon the morning of January 4th, was acting as a canal pilot as fully as he did upon the day before, and that the canal company is liable for his negligence.

The decree of the District Court is affirmed, with costs to the appellee in this court.